**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**LISA COLE,**

                    **Plaintiff,**

            **v.**
                                    **5:15-CV-876**
                                     **(FJS/ATB)**

**NEW YORK STATE DEPARTMENT OF**
**CORRECTIONS; SUPERINTENDENT**
**RICKEY BARTLETT, in his official capacity and**
**individually; SERGEANT DONALD**
**HORTON, in his official capacity and**
**individually; LIEUTENANT BILL REYNOLDS,**
**in his official capacity and individually; and**
**CAPTAIN HARRY HETRICK, in his official**
**capacity and individually,**

                    **Defendants.**
_____

**APPEARANCES**                       **OF COUNSEL**

**TULLY RINCKEY PLLC**       **KELLY A. MAGNUSON, ESQ.**
441 New Karner Road             **MICHAEL W. MACOMBER, ESQ.**
Albany, New York 12205
Attorneys for Plaintiff

**OFFICE OF THE NEW YORK**    **JOHN F. MOORE, AAG**
**STATE ATTORNEY GENERAL**
The Capitol
Albany, New York 12224
Attorneys for Defendants

**SCULLIN, Senior Judge**

**MEMORANDUM-DECISION AND ORDER**

## I. INTRODUCTION

Pending before the Court are Defendants' motion to dismiss pursuant to Rule 12 of the Federal Rules of Civil Procedure, *see generally* Dkt. No. 11, and Plaintiff's cross-motion for leave to amend her complaint pursuant to Rule 15 of the Federal Rules of Civil Procedure, *see generally* Dkt. No. 17. In her proposed amended complaint, Plaintiff alleges that each individual Defendant violated her constitutional right to equal protection under the law and that Defendant Department of Corrections and Community Supervision ("DOCCS") discriminated against her in violation of Title VII.

## II. BACKGROUND

Plaintiff started working as a correctional officer on May 3, 2004. *See* Dkt. No. 17-2 at ¶ 18. Plaintiff achieved the rank of Sergeant on February 6, 2012. *See id.* at ¶ 19. Plaintiff began working at the Willard Drug Treatment Facility ("Willard") on June 3, 2013, *see id.* at ¶ 17; and she claims that she was immediately subject to harassment after her transfer, *see id.* at ¶ 23. For example, starting in July 2013, Plaintiff began finding blank copies of a "Security Employee Request Transfer" form in her work mailbox. *See id.* at ¶ 36.

Furthermore, Plaintiff asserts that, in June 2013, Defendant Reynolds asked her if she would like to "go out sometime." *See id.* at ¶ 28. When Plaintiff declined, stating she was married, Defendant Reynolds asked if she were "happily married?" *See id.* Sometime later, Defendant Reynolds told her, "You know if things don't work out with your husband the offer still stands." *See id.* Plaintiff claims that, beginning in September 2014, Defendant Reynolds denied her time-off requests. *See id.* at ¶ 32. Plaintiff also alleges that, in December 2014,

Defendant Reynolds stated, "See I knew you could handle it, you're a woman. Women are good at multi-tasking." *See id.* at ¶ 23d.

Plaintiff alleges that Defendant Horton made several inappropriate statements to her. *See id.* at ¶ 23. In June 2013, Defendant Horton stated to Plaintiff, "Must be nice, you've only been here a few days and the Department is sending you off to training. I guess that is what happens when you're a woman and the Dep's kid." *See id.* at ¶ 23a. Further, in June 2013, Defendant Horton stated to Plaintiff, "What makes you qualified to run a study group? . . . I don't kiss the administration's ass! Looks like we have another fucking Grimes." ("Grimes" refers to Carol Grimes, a female sergeant who previously worked at Willard). *See id.* at ¶ 23b. Finally, in October 2013, Defendant Horton stated to Plaintiff, "I don't give a fuck. No one's going to listen to you . . . because you're a woman." *See id.* at ¶ 23c. Defendant Horton also allegedly told officers to disregard Plaintiff's memos. *See id.* at ¶ 37.

Moreover, in January 2015, someone tried to break into Plaintiff's personal locker, there was an unknown substance on the back of Plaintiff's padlock, and someone wrote "fuck Cole" on the inside of a mess hall desk drawer. *See id.* at ¶ 39a-c.

Plaintiff wrote a sixteen-page complaint to "McCarthy" in January 2015 detailing her allegations of discrimination and harassment. *See id.* at ¶ 29. According to Plaintiff, no action has been taken to address her complaints. *See id.*

On March 1, 2015, Defendant Reynolds wrote Plaintiff a letter informing her that she was not performing her job efficiently. *See id.* at ¶ 31. Also in early March, multiple officers mimicked Plaintiff's voice and words. *See id.* at ¶ 38.

According to Plaintiff, the acts of retaliation peaked on March 19, 2015. *See id.* at ¶ 33. On that date at approximately 1:55 p.m., Plaintiff returned a calculator she had used; and

Defendant Horton "immediately picked up the calculator, looked directly at [Plaintiff] and threw the calculator violently against the wall." *See id.* at ¶ 33b. Plaintiff confronted Defendant Horton by saying, "Can't you just be professional for one minute?" *See id.* at ¶ 33c. Defendant Horton "aggressively" told her that if she "didn't like it then go report it to the captain." *See id.* at ¶ 33d. This event took place the afternoon before the Office of Diversity Management ("ODM") was scheduled to interview Defendant Horton, Defendant Reynolds, and Plaintiff regarding Plaintiff's January complaint. *See id.*

Plaintiff walked away from the scene and proceeded to Defendant Hetrick's office where she began to cry and shake. *See id.* at ¶ 33e. A nurse arrived, discovered Plaintiff's blood pressure was 170/120, and recommended that Plaintiff see a physician. *See id.* at ¶ 33f. According to Plaintiff, Defendant Hetrick gave her three options: "(1) [t]o have Willard staff drive her so she could get medical attention; (2) [t]o have someone come and get her, or (3) . . . [to] leave on her own." *See id.* at ¶ 33h.

Plaintiff decided to have Willard staff drive her to get medical attention. *See id.* Plaintiff then asked to speak to a union representative, and Defendant Hetrick told Plaintiff that Defendant Horton was the only union representative who was available. *See id.* at ¶ 33i. Defendant Hetrick then left the room, and Plaintiff called the nurse and said she had requested medical attention but was denied. *See id.* at ¶ 33j. Defendant Hetrick came back to the room and told Plaintiff to sit down. *See id.* at ¶ 33k. Plaintiff attempted to dial the nurse again and attempted to use her radio unit but was told to stop. *See id.* Plaintiff was told to stay in the office, was denied medical attention, and was required to be escorted to the bathroom. *See id.* at ¶ 33l-q. Then, at 3:45 p.m., a union representative and an ambulance arrived and escorted Plaintiff out of the facility to go to a hospital. *See id.* at ¶ 33s-u.

After Plaintiff was released from the hospital, she attempted to return to Willard to file a grievance but was denied access to the building and forced to file the grievance in the parking lot. *See id*. at ¶ 34. Further, according to Plaintiff, she was denied worker's compensation leave, citing a "pre-existing condition" with no evidence that she had a pre-existing condition. *See id*. at ¶ 35.

Plaintiff transferred to the Auburn facility in May 2015.[1] *See id.* at ¶ 40. Immediately after her transfer, Lieutenant Quinn (not a defendant in this action) told her that "females don't work the SHU at this facility." *See id.* at ¶ 24. Further, on July 25, 2015, Sergeant Vanfleet (also not a defendant in this action) told Plaintiff, in a hostile manner, "I know who you are and where you come from. Get out of here." *See id*. at ¶ 43. On November 20, 2015, Plaintiff noticed inappropriate graffiti on the walls pertaining to a male sergeant, "Moe," who had been suspended for sexually harassing and stalking a female officer. *See id.* at ¶ 44. The graffiti stated: "Bring back Moe," "Moe's in Love," "Jihad Moe," and "Full out ejaculation." *See id*. at ¶ 45. After seeing this graffiti, Plaintiff became upset and tried to leave; but Lieutenant Quinn blocked her exit; and, after she finally was permitted to leave, he refused to allow her back in the room. *See id.* at ¶ 46. Moreover, on November 24, 2015, as Plaintiff entered her supervisor's office, seven male officers rose simultaneously and walked out the door together; one called Plaintiff a "rat" as they exited, and Sergeant Dillalo stared Plaintiff down. *See id.* at ¶ 47. On Friday, December 18, 2015, Plaintiff discovered dozens of flyers posted around the prison depicting numerous images: one flyer depicted a figure dressed as a sergeant, another depicted three skulls. *See id*. at ¶ 49. The flyers included statements such as: "I saw nothing," "I know

---

[1] The facts in this paragraph are only alleged in Plaintiff's proposed amended complaint.

nothing," "I say nothing." *See id.* The flyers promoted not speaking to investigators or making complaints. *See id.* The flyers remained on the walls for an entire weekend until Plaintiff reported the flyers to DOCCS legal counsel. *See id.* at ¶ 52. Finally, on December 29, 2015, a sergeant from Willard approached Plaintiff's daughter at a social event. *See id.* at ¶ 53.

Plaintiff filed the instant action on July 20, 2015. *See* Dkt. No. 1. Plaintiff's original complaint raised three causes of action.[2] First, Plaintiff raised a § 1983 claim alleging discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment. *See id.* at ¶¶ 37-42. Second, Plaintiff raised a § 1983 claim alleging retaliation in violation of the Equal Protection Clause of the Fourteenth Amendment. *See id.* at ¶¶ 43-51. Finally, Plaintiff raised a § 1983 claim alleging hostile work environment in violation of the Equal Protection Clause of the Fourteenth Amendment. *See id.* at ¶¶ 52-57. Furthermore, in her complaint, Plaintiff stated that she was

> simultaneously filing a complaint with the Equal Employment Opportunity Commission [("EEOC")] alleging gender discrimination, sexual harassment, retaliation and hostile work environment. [Plaintiff] intends to amend the instant matter to include additional causes of action under Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e, *et. seq.*, once all administrative remedies have been exhausted.

*See id.* at ¶ 52.

Plaintiff subsequently filed a charge with the EEOC on November 3, 2015, *see* Dkt. No. 17-4, and received a right to sue letter on February 4, 2016, *see* Dkt. No. 17-5.

Defendants filed a motion to dismiss on October 30, 2015. *See* Dkt. No. 11. Plaintiff requested two extensions of time to respond to Defendants' motion to dismiss. *See* Dkt. Nos. 13,

---

[2] Plaintiff did not distinguish against whom she was alleging each cause of action. Thus, it appears that Plaintiff asserted each cause of action in the original complaint against Defendants DOCCS, Superintendent Rickey Bartlett, Sergeant Donald Horton, Lieutenant Bill Reynolds, and Captain Harry Hetrick. *See* Dkt. No. 1.

15.  In Plaintiff's second request, she asked for leave from the Court to file an amended complaint to include claims against new supervisors based on continuing discrimination she experienced at the Auburn facility and to include additional causes of action based on Title VII after she received her right-to-sue letter from the EEOC.  *See* Dkt. No. 15.  The Court directed Plaintiff to file a cross-motion for leave to amend and a response to Defendants' motion to dismiss by February 12, 2016.  *See* Dkt. No. 16.

On February 12, 2016, Plaintiff moved for leave to file an amended complaint.  Plaintiff's proposed amended complaint made several changes to her original complaint.  First, Plaintiff did not include any § 1983 Equal Protection claims against Defendant New York State Department of Corrections and Community Supervision ("DOCCS"), conceding Defendants' argument that the Eleventh Amendment to the United States Constitution barred these claims.  *See* Dkt. No. 18 at 2.  Second, Plaintiff did not include any claims against Defendant Bartlett.  *See id*.  Third, Plaintiff added two new claims pursuant to Title VII against Defendant DOCCS.  Fourth, Plaintiff included new factual allegations related to events that had occurred after she filed her original complaint.  Finally, she clarified against whom she alleged each § 1983 cause of action.

Thus, Plaintiff's proposed amended complaint asserts the following claims: (1) a § 1983 gender discrimination and hostile work environment claim against Defendant Horton, *see* Dkt. No 17-2 at ¶¶ 59-64; (2) a § 1983 retaliation claim against Defendants Horton, Reynolds, and Hetrick, *see id.* at ¶¶ 65-73; (3) a § 1983 hostile work environment and quid pro quo harassment claim against Defendant Reynolds, *see id.* at ¶¶ 74-77; (4) a discrimination and hostile work environment claim under Title VII against Defendant DOCCS, *see id.* at ¶¶ 78-85; and (5) a retaliation claim under Title VII against Defendant DOCCS, *see id.* at ¶¶ 86-91.

# III. DISCUSSION

**A.     Plaintiff's motion for leave to amend her complaint**

A court should grant leave to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). However, "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . [or] futility of amendment" will serve to prevent an amendment prior to trial. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Substantively, Plaintiff seeks leave to amend her complaint to bring claims pursuant to Title VII against Defendant DOCCS for acts of discrimination she alleged in her original complaint and for additional acts of discrimination that allegedly occurred after she filed this action. *See* Dkt. No. 17-6 at 3.

Defendants make several arguments in opposition to Plaintiff's motion for leave to amend. First, they argue that Plaintiff has unilaterally dropped Defendant DOCCS from the complaint and that Plaintiff's motion for leave to amend her complaint to include Title VII charges against DOCCS is really an attempt to join a new party and add new claims. *See* Dkt. No. 19 at 6-7. This argument is without merit. Plaintiff does not seek to *add* new defendants; DOCCS is *already* a party to this action. Rather, she seeks to add new claims, and abandon other claims, against Defendant DOCCS.

Defendants' argument that leave to amend would unfairly prejudice them is also without merit. There will be no undue delay because Defendants reiterated and referenced arguments made in their original motion to dismiss in response to the proposed amended complaint; thus, there is no need for further briefing. In addition, Defendants contend that the Court should deny the motion for leave to amend because the new factual allegations in the proposed amended

complaint involve a new facility and new claims under Title VII. *See* Dkt. No 19 at 5-8. Although true, this does not preclude the Court from granting Plaintiff's motion for leave to amend, especially where the new claims apply to a pre-existing defendant, are based on retaliation after Plaintiff filed her original complaint, and the original complaint includes an express statement that an amendment would be forthcoming upon obtaining a right-to-sue letter. *See* Dkt. No 1 at ¶ 52. For all these reasons, the Court finds that there will be no prejudice to Defendants if the Court allows Plaintiff to amend her complaint.

The Defendants' remaining arguments focus on the merits of Plaintiff's claims and assert that any amendment would be futile. "Where a plaintiff seeks to amend [her] complaint while a motion to dismiss is pending, a court 'has a variety of ways in which it may deal with the pending motion to dismiss, from denying the motion as moot to considering the merits of the motion in light of the amended complaint.'" *Hamzik v. Office for People with Developmental Disabilities*, 859 F. Supp. 2d 265, 273-74 (N.D.N.Y. 2012) (quotation omitted). In this case, because Defendants have addressed Plaintiff's proposed amended complaint in their reply, the Court grants Plaintiff's motion for leave to amend her complaint and will consider the merits of Defendants' motion in light of the proposed amended complaint.

**B.      Preliminary issues**

*1. Jurisdiction over facts not alleged in Plaintiff's EEOC charge*

There is a preliminary question of whether this Court has jurisdiction over any Title VII claims stemming from Plaintiff's allegations about what occurred at the Auburn facility because she did not include those incidents in her EEOC charge. Plaintiff's EEOC charge includes the same facts alleged in the original and proposed amended complaint regarding what occurred at

the Willard facility up to and including Plaintiff's return to Willard to file a grievance after the March 19, 2015 incident. *See* Dkt. No. 17-4. However, the EEOC charge does not allege any facts about anything that occurred after March 2015, including any facts related to what occurred at the Auburn facility. *See id.*

"[J]urisdiction exists over Title VII claims only if they have been included in an EEOC charge 'or are based on conduct *subsequent* to the EEOC charge which is "reasonably related" to that alleged in the EEOC charge.'" *Alfano v. Costello*, 294 F.3d 365, 381 (2d Cir. 2002) (quotation omitted) (emphasis added). "Subsequent conduct is reasonably related to conduct in an EEOC charge if: [1] the claim would fall within the reasonably expected scope of an EEOC investigation of the charges of discrimination; [2] it alleges retaliation for filing the EEOC charge; or [3] the plaintiff 'alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge.'" *Id.* (quoting *Butts v. City of N.Y. Dep't of Hous. Preservation and Dev.*, 990 F.2d 1397, 1402-03 (2d Cir. 1993)).

In this case, most of Plaintiff's allegations regarding her treatment at the Auburn facility happened after she filed her EEOC charge on November 3, 2015. Although Plaintiff labels these actions as "ACTS OF RETALIATION POST LAWSUIT FILING,"[3] in effect they are acts of retaliation post-EEOC charge. *See* Dkt. No 17-2 at 12. Therefore, the Court can properly consider the allegations regarding incidents that occurred after November 3, 2015, as acts of retaliation for filing her EEOC charge, with respect to her Title VII retaliation claim.

---

[3] Although characterizing these facts as "retaliation post-lawsuit filing" might be accurate, this description is unhelpful to Plaintiff's position because incidents that occurred before she filed the EEOC charge, as discussed below, cannot be considered in her Title VII claim. Furthermore, none of these incidents concern any of the individual defendants; therefore, these incidents are inapplicable to any of the claims that Plaintiff has pled against the individual Defendants in this case.

However, Plaintiff has included three factual allegations in her proposed amended complaint that relate to incidents that occurred *before* she filed her EEOC charge.  First, there is Lieutenant Quinn's May 2015 statement, "Females don't work the SHU at this facility."  Second, there is the July 25, 2015 incident involving Sergeant Vanfleet.  Finally, there is the October 2015 incident where Plaintiff was denied access to watch the admission process and told to "just keep riding the elevator."  *See id.* at ¶ 26.  It was incumbent on Plaintiff "to include all relevant alleged discriminatory conduct when [s]he filed the EEOC charge."  *Townsend v. Exch. Ins. Co.*, 196 F. Supp. 2d 300, 313 (W.D.N.Y. 2002).  Furthermore, these incidents fail to meet any of the tests announced in *Butts* because they occurred before, not "subsequent" to, the EEOC charge.  Due to these deficiencies, the Court concludes that it lacks jurisdiction to consider these three incidents as part of Plaintiff's Title VII claims.

### 2. Claims against the individual Defendants in their official capacity

Another preliminary issue involves determining whom, and in what capacity, Plaintiff may sue.[4]  In her proposed amended complaint, Plaintiff sues Defendants Horton, Hetrick, and Reynolds in their official and individual capacities.  Defendants argue that the Eleventh Amendment bars suit against these individuals in their official capacities.[5]  The main significance of this amendment is the fundamental principle of sovereign immunity.  *See*

---

[4] As stated before, Plaintiff only sues Defendant DOCCS under Title VII.  Furthermore, Plaintiff does not include any claims against Defendant Bartlett in her proposed amended complaint.  *See* Dkt No. 18 at 2.

[5] The Eleventh Amendment provides that "[t]he Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984). Therefore, "an action for damages cannot be maintained against a state official in his official capacity, since a judgment in such an action would 'impose[] liability on the entity that [the official] represents. . . .'" *Morgan v. Ward*, 699 F. Supp. 1025, 1032 (N.D.N.Y. 1988) (quoting *Kentucky v. Graham*, 473 U.S. 159, 169, 105 S. Ct. 3099, 3107, 87 L. Ed. 2d 114 (1985)). However, a plaintiff may sue a state official in his individual capacity when she asserts that the defendant deprived her of a federal right under the color of state law. *See id.*

In addition, officials are not immune, even when sued in their official capacity, "from injunctive or other prospective relief for an ongoing violation of federal law." *Huminski v. Corsones*, 396 F.3d 53, 73 (2d Cir. 2004) (citing *Ex parte Young*, 209 U.S. 123, 159-60, 28 S. Ct. 441, 52 L. Ed. 714 (1908)). In Plaintiff's prayer for relief, she seeks an injunction, "against Defendants from engaging in the acts complained of herein," *see* Dkt. No. 17-2 Prayer for Relief ¶ B, which may, at least in part, be construed as a request for prospective relief. However, the individual Defendants cannot provide her with the prospective relief she seeks because they are no longer her supervisors. She now works at Auburn, whereas these individuals work at Willard. Therefore, the Court dismisses Plaintiff's claims against Defendant Horton, Hetrick, and Reynolds to the extent that she seeks to sue them in their official capacities.

### 3. Timeliness of claims

#### a. Title VII claims

As a prerequisite to bringing suit under Title VII, individuals must file a charge with the EEOC within 300 days "after the unlawful employment practice occurred[.]" 42 U.S.C. § 2000e-5(e)(1). "[T]he word 'practice' in this context refers to 'a discrete act or single "occurrence"'" and

that 'a discrete retaliatory or discriminatory act "occurred" on the day that it happened.'" *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 79 (2d Cir. 2015) (quoting [*Nat'l R.R. Passenger Corp. v. Morgan*,] 536 U.S. 101, 110-11, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002)).  In other words, "'[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable "unlawful employment practice."'" *Id.* (quotation omitted). Plaintiff filed her charge with the EEOC on November 3, 2015; therefore, acts that occurred prior to January 7, 2015, are time-barred.

Plaintiff's proposed amended complaint includes the following incidents that occurred prior to January 7, 2015.  In June 2013, Defendant Reynolds asked Plaintiff to "go out sometime."  *See* Dkt. No. 17-2 at ¶ 28.  Beginning in July 2013, Plaintiff found blank copies of a request to transfer form in her mailbox.  *See id.* at ¶ 36.  Defendant Horton made remarks to Plaintiff in June 2013, October 2013, and December 2014.  *See id.* at 17-2, ¶ 23a-d. Commencing in September 2014, Defendant Reynolds denied Plaintiff's time-off requests.  *See id.* at ¶ 32.

Plaintiff argues that the Court should consider these allegations for purposes of her Title VII claims based on the continuing violation doctrine.  Under that doctrine, "[w]hen a plaintiff experiences a '"continuous practice and policy of discrimination,"' . . . '"the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it."'"  *Cornwell v. Robinson*, 23 F.3d 694, 703 (2d Cir. 1994) (quotation and other citation omitted).  "The purpose of the continuing violation doctrine is to allow plaintiffs to challenge an ongoing practice of discrimination, so long as at least one episode falls within the statute of limitations."  *Brown v. Castleton State Coll.*, 663 F. Supp. 2d 392, 399 (D. Vt. 2009) (citation omitted).  However, "the continuing-violation doctrine does not apply to discrete acts, but only to

ongoing circumstances that combine to form a single violation that 'cannot be said to occur on any particular day.'" *Deters v. City of Poughkeepsie*, 150 F. App'x 10, 12 (2d Cir. 2005) (summary order) (quoting *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113-15, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002)).

Whether the continuing violation doctrine applies hinges on the cause of action and the type of harm alleged. For example, discrete acts of discrimination/retaliation by definition cannot form the basis for a continuing violation, but a hostile work environment claim can. *See Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 91 (2d Cir. 2011); *see also Washington v. Cty. of Rockland*, 373 F.3d 310, 318 (2d Cir. 2004) (holding, in the Title VII discrimination context, that the relevant conduct was the defendant's decision to file charges against the plaintiffs, and a continuing violation did not exist throughout the prosecution of the charges). Therefore, the Court will not consider any incidents of discrete retaliation or discrimination that occurred prior to January 7, 2015, when addressing Plaintiff's Title VII discrimination claim. *See Patterson v. County of Oneida*, N.Y., 375 F.3d 206, 220 (2d Cir. 2004) (stating that "§ 2000e–5(e)(1) 'precludes recovery for *discrete* acts of discrimination or retaliation that occur outside the statutory time period,' even if other acts of discrimination occurred within the statutory time period" (quotation omitted)).

"'[H]ostile work environment claims are different in kind from discrete acts.'" *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 75 (2d Cir. 2010) (quoting *Morgan*, 536 U.S. at 115, 122 S. Ct. 2061). To succeed on her Title VII hostile environment claim, Plaintiff "must show that [s]he subjectively perceived the environment to be hostile or abusive and that the environment objectively was hostile or abusive, that is, that it was permeated with discriminatory intimidation, ridicule, and insult sufficiently severe or pervasive to alter the conditions of [her] educational

environment." *Papelino*, 633 F.3d at 89 (citations omitted) (Title IX context).  Furthermore, courts "look[] at the totality of the circumstances rather than to individual events in isolation." *Gregory v. Daly*, 243 F.3d 687, 693 (2d Cir. 2001) (citation omitted).  Accordingly, "'consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period.'" *McGullam*, 609 F.3d at 75 (quoting [*Morgan*, 536 U.S.] at 105, 122 S. Ct. 2061) (other citation omitted).  Under Second Circuit precedent "a sexually offensive incident within the limitations period permits consideration of an incident preceding the limitations period only if the incidents are sufficiently related." *Id* at 77; *see also id.* (quoting *Morgan*, 536 U.S. at 118, 122 S. Ct. 2061 ("[I]t does not matter whether nothing occurred within the intervening [ ] days so long as each act is part of the whole.")).  Furthermore, the court must "make an individualized assessment of whether incidents and episodes are related." *Id.*  The within-limitations event does not itself have to be severe enough to form the basis of a claim; rather relatedness is the key.  *See id*.

Thus, when considering the continuing violation doctrine with respect to a hostile work environment claim, the inquiry is twofold.  The court begins by asking whether the plaintiff alleged any discriminatory act within the limitations period, *see id.* at 76, and then asks whether the pre-limitations period events are separate or related acts of discrimination.  Plaintiff has alleged a number of discrete acts within the limitations period; thus, the main issue is whether the pre-limitations acts are sufficiently related to those acts.

In making this determination "courts consider three factors: (1) whether the incidents of discrimination are similar in kind; (2) whether the incidents are recurring or isolated in nature;

and (3) whether the effect of the discrimination is permanent in nature, and thus should trigger an individual to assert his rights." *Zavala v. Cornell Univ.*, 9 F. Supp. 3d 213, 222 (N.D.N.Y. 2014) (citing *Berry v. Bd. of Supervisors of La. State Univ.*, 715 F.2d 971, 981-82 (5th Cir. 1983)) (footnote omitted). In this case, Plaintiff has satisfied the first factor because the pre-limitations acts involved Defendant Reynolds' sexual advances, which Plaintiff alleges are related to how he treated her in 2015, as well as Defendant Horton's comments, which she alleges are related to the hostility he displayed in 2015. Plaintiff has also satisfied the second factor as she sufficiently alleges that these events were not merely isolated, but rather occurred as a "continuum of discrimination." *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 766 (2d Cir. 1998). Finally, she has satisfied the third factor because none of the pre-limitations instances of discrimination were permanent in nature and would have triggered Plaintiff to assert her rights. Therefore, the Court will consider all the alleged facts, whenever they occurred, in assessing the plausibility of Plaintiff's Title VII hostile work environment claim.

### b. Section 1983 claims

"Claims under § 1983 are governed by a three-year statute of limitations in New York." *Vega*, 801 F.3d at 79 (citation omitted). "Hence, a plaintiff asserting a claim of discrimination under § 1983 must file suit within three years of the adverse employment action." *Id*. Plaintiff filed the instant action on July 20, 2015; therefore, acts that occurred prior to July 20, 2012, are time-barred. All of the alleged actions fall within the statute-of-limitations period for Plaintiff's § 1983 claims against Defendants Hetrick, Reynolds, and Horton.

**C.    Defendants' motion to dismiss Plaintiff's proposed amended complaint**

*1. Standard of review*

Courts use a two-step inquiry when considering a Rule 12(b)(6) motion.  "First, they isolate the moving party's legal conclusions from its factual allegations."  *Hyman v. Cornell Univ.*, 834 F. Supp. 2d 77, 81 (N.D.N.Y. 2011).  Second, they must accept the plaintiff's factual allegations as true and "determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  In this regard, a pleading must contain more than a "blanket assertion[ ] of entitlement to relief."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007). Thus, to withstand a motion to dismiss, a pleading must be "plausible on its face" such that it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citation omitted).


*2. Retaliation claims*

*a. Title VII -- Defendant DOCCS*

Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of [its] employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).  "Thus, for a retaliation claim to survive . . . a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated -- or took an adverse employment action -- against h[er], (2) 'because' [s]he has opposed any unlawful employment practice."  *Vega*, 801 F.3d at 90 (quotation omitted).

An adverse employment action, in the context of a Title VII retaliation claim, covers a broader range of activity than a discrimination claim. *See id.* The Supreme Court explained the reasoning behind this different standard:

> The antidiscrimination provision seeks a workplace where individuals are not discriminated against because of their racial, ethnic, religious, or gender-based status. . . . The antiretaliation provision seeks to secure that primary objective by preventing an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees. The [antidiscrimination] provision seeks to prevent injury to individuals based on who they are, *i.e.*, their status. The antiretaliation provision seeks to prevent harm to individuals based on what they do, *i.e.*, their conduct.

*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 63 (2006) (internal citation omitted). "An employer can effectively retaliate against an employee by taking actions not directly related to his employment or by causing him harm *outside* the workplace." *Id.* (citations omitted) Therefore, an adverse employment action is any action that "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Id.* at 57. Furthermore, "the alleged acts of retaliation need to be considered both separately and in the aggregate, as even minor acts of retaliation can be sufficiently 'substantial in gross' as to be actionable." *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010) (quoting *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 227 (2d Cir. 2006)). Thus, "context can diminish as well as enlarge material effect." *Id.*

"A plaintiff engages in 'protected activity' when she (1) opposes employment practices prohibited under Title VII; (2) makes a charge of discrimination; or (3) participates in an investigation, proceeding or hearing arising under Title VII." *Bundschuh v. Inn on the Lake Hudson Hotels, LLC*, 914 F. Supp. 2d 395, 405 (W.D.N.Y. 2012) (citations omitted). In addition, to qualify as protected activity, an employee's complaint must have been based on "'a good faith, reasonable belief that [she] was opposing an employment practice made unlawful by Title VII.'" *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d

Cir. 2013) (quotation and other citation omitted).  "The reasonableness of the plaintiff's belief is assessed in light of the totality of the circumstances[.]"  *Davis v. NYS Dep't of Corr. Attica Corr. Facility*, 110 F. Supp. 3d 458, 463 (W.D.N.Y. 2015).

"As for causation, a plaintiff must plausibly plead a connection between the act and [her] engagement in protected activity."  *Vega*, 801 F.3d at 90 (citation omitted).  "The causal connection needed for proof of a retaliation claim '"can be established indirectly by showing that the protected activity was closely followed in time by the adverse action,"'"  *Cifra v. G.E. Co.*, 252 F.3d 205, 217 (2d Cir. 2001) (quotation omitted), or "'directly, through evidence of retaliatory animus directed against the plaintiff by the defendant,'"  *Littlejohn v. City of New York*, 795 F.3d 297, 319 (2d Cir. 2015) (quotation omitted).  Furthermore, a plaintiff "must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action."  *Vega*, 801 F.3d at 90 (citation omitted).  "However, 'but-for' causation does not require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive."  *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013) (footnote omitted).

In addition, a plaintiff need not demonstrate a connection between the retaliatory acts and her sex. *See Vega*, 801 F.3d at 91.  As the Second Circuit has noted, "[r]etaliation occurs when an employer takes action against an employee not because of [her sex], but because [s]he engaged in protected activity -- complaining about or otherwise opposing discrimination."  *Id*.

As a threshold matter, Plaintiff engaged in protected activity when she filed a written complaint with ODM in January 2015, when she attempted to file a grievance in March 2015 (and was forced to do so from the parking lot), when she filed the instant lawsuit on July 20,

2015, when she filed the charge with the EEOC on November 3, 2015, and when she filed a written complaint on November 20, 2015.

The plausible acts of retaliation include the following: the various notes/substances found at Plaintiff's locker in January 15, 2015; a letter stating Plaintiff was performing her job inefficiently on March 1, 2015; the incident on March 19, 2015; forcing Plaintiff to file a grievance in the parking lot; denying Plaintiff's worker's compensation leave; inappropriate graffiti in the supervisor's room; calling Plaintiff a "rat"; the dozens of flyers depicting images meant to discourage complaints; and a DOCCS employee approaching Plaintiff's daughter. These acts "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *White*, 548 U.S. at 57.

Finally, each of these incidents occurred shortly after Plaintiff engaged in protected activity. The letter came after Plaintiff filed a complaint with the ODM; the incident on March 19, 2015, occurred days before ODM was scheduled to interview several Defendants; and the graffiti and signs occurred within two months of Plaintiff's EEOC complaint. Furthermore, several of these incidents are directly retaliatory, including calling Plaintiff a "rat"; forcing her to file a grievance in the parking lot; approaching her daughter; and the posters and the graffiti. At this stage in the litigation, Plaintiff has pled an adequate basis to support a Title VII retaliation claim. Therefore, the Court denies Defendants' motion to dismiss Plaintiff's fifth cause of action, a Title VII retaliation claim, against Defendant DOCCS.

### b. Section 1983 – Defendants Hetrick, Reynolds, and Horton

"[A] state employee may bring a retaliation claim under § 1983 [when a defendant,] act[ing] under color of law, retaliates against [her] for opposing discrimination in the terms of

[her] employment." *Vega*, 801 F.3d at 82.  "[F]or a retaliation claim under § 1983 to survive . . . a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants acted under the color of state law, [and] (2) defendants took adverse employment action against [her], (3) because [s]he complained of or otherwise opposed discrimination." *Id.* at 91.

The analysis for a retaliation claim under § 1983 is identical to such a claim under Title VII with the exception that a plaintiff may bring § 1983 claims against individual defendants and the plaintiff must allege that the defendants acted under color of state law.  *See Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004) (stating, with regard to Title VII and § 1983 claims, that "[t]he elements of one are generally the same as the elements of the other and the two must stand or fall together" (citations omitted)).  Here, Plaintiff "has shown that the deprivations [s]he alleges were under color of state law because they were committed by state employees acting in their official capacities."  *Id.* (citations omitted).  Further, each individual Defendant is tied to a specific retaliatory event discussed above.[6]  Therefore, the Court denies Defendants' motion to dismiss Plaintiff's second cause of action, a § 1983 retaliation claim, against Defendants Horton, Reynolds, and Hetrick.

### 3. Sexual discrimination claims

#### a. Title VII – Defendant DOCCS

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to h[er]

---

[6] Defendant Horton and Hetrick participated in the March 19, 2015 event, and Defendant Reynolds gave the negative performance review.  These events took place months after Plaintiff filed an internal complaint and weeks/days before ODM was scheduled to interview Defendants about the complaint.

compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1). To survive a motion to dismiss, "a plaintiff must plausibly allege that (1) the employer took adverse action against [her] and (2) [her] . . . sex . . . was a motivating factor in the employment decision." *Vega*, 801 F.3d at 86. In other words, "a plaintiff must allege that the employer took adverse action against her at least in part for a discriminatory reason, and she may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Id*. at 87 (citation omitted).

As to the first element, "[a] plaintiff sustains an adverse employment action if . . . she endures a 'materially adverse change' in the terms and conditions of employment." *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (citation and footnote omitted). As stated above, this is a more demanding standard than required for a retaliation claim. "Examples of materially adverse changes include 'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.'" *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003) (quotation omitted).

"As to the second element, an action is 'because of' a plaintiff's . . . sex . . . where it was a 'substantial' or 'motivating' factor contributing to the employer's decision to take the action." *Vega*, 801 F.3d at 85 (citations omitted). This standard is lesser than the "but-for" causation required for retaliation claims. *See id*. at 86.

In this case, Plaintiff has failed to allege a materially adverse employment action with respect to the terms and conditions of employment. *See Davis v. New York City Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015) (quotation omitted). Plaintiff's work-related complaints

include that Defendant Reynolds denied her sick leave on September 17, 2014 and "other dates." *See* Dkt. No 17-2 at ¶ 32. In addition, Plaintiff was denied a Worker's Compensation claim. *See id.* at ¶ 35. Furthermore, Defendant Reynolds gave her a negative performance evaluation on a meal ticket. *See id.* at ¶ 31. None of these incidents are "'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Sanders v. New York City Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004) (holding that a single critical evaluation was insufficient to be considered materially adverse (citation omitted)); *see also Chung v. City Univ. of New York*, 605 F. App'x 20, 22 (2d Cir. 2015) (summary order) (finding a negative performance review and exclusion at several meetings did not rise to the level of an adverse employment action). Therefore, the Court grants Defendants' motion to dismiss Plaintiff's fourth cause of action, a Title VII discrimination claim, against Defendant DOCCS. [7]

### b. Section 1983 -- Defendant Horton

"To state a claim under § 1983, a plaintiff must allege two elements: (1) 'the violation of a right secured by the Constitution and laws of the United States,' and (2) 'the alleged deprivation was committed by a person acting under color of state law.'" *Vega*, 801 F.3d at 87-88 (quotation

---

[7] Although Lieutenant Quinn told Plaintiff that she could not work in a certain section of the Auburn facility, that fact cannot be considered in this Title VII claim because it was not included or reasonably related to allegations in Plaintiff's EEOC charge. In any event, the fact that Plaintiff could not work in the SHU does not rise to the level of an adverse employment action because there is no evidence that this created any materially adverse change in the terms and conditions of her employment. *See Galabya*, 202 F.3d at 640; *see also Carpenter v. City of Mount Vernon*, No. 15-cv-0661, 2016 WL 4059353, *6 (S.D.N.Y. July 27, 2016) (no plausible allegation of an adverse employment action because the plaintiff failed to allege that the decision resulted in any "negative consequences"); *Sank v. City Univ. of New York*, No. 10 Civ. 4975, 2011 WL 5120668, *9 (S.D.N.Y. Oct. 28, 2011) (finding that the plaintiff's loss of adequate storage space did not plausibly allege an adverse employment action because "the Complaint does not contain a single allegation that [the plaintiff] suffered any diminution in title, seniority, salary or other tangible benefits as a consequence of this decision").

omitted).  A § 1983 discrimination claim mirrors a Title VII claim after the color of law requirement has been met except that it can be brought against individual defendants.  *See id.* at 88 (citation omitted).

Plaintiff's only § 1983 discrimination claim is against Defendant Horton.  This claim fails for the same reasons as her Title VII discrimination claim against Defendant DOCCS, namely that Plaintiff has failed to allege an adverse employment action.  Therefore, the Court grants Defendants' motion to dismiss Plaintiff's first cause of action insofar as it asserts discrete acts of gender discrimination against Defendant Horton.

### 4. Hostile work environment

#### a. Title VII -- Defendant DOCCS

Plaintiff alleges that Defendant DOCCS "creat[ed] a hostile work environment in violation of Title VII."  *See* Dkt. No. 17-2 at ¶ 79.  "When the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' . . . that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' . . . Title VII is violated."  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotations omitted).  Thus, to plead a hostile work environment claim a plaintiff must show "[1] that the harassment was 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' and [2] that a specific basis exists for imputing the objectionable conduct to the employer."  *Alfano*, 294 F.3d at 373 (quotation omitted).  "In short, a plaintiff alleging a hostile work environment 'must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were "sufficiently continuous and concerted" to have altered the conditions of her working environment.'"  *Id*.

(quoting *Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 570 (2d Cir. 2000) (quoting *Perry*, 115 F.3d at 149)). "The first element of a hostile work environment claim has both an objective and subjective component: 'the misconduct must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive.'" *Petrosino v. Bell Atl.*, 385 F.3d 210, 221 (2d Cir. 2004) (quotation omitted). Further, "a plaintiff must demonstrate that the conduct occurred because of her sex." *Alfano*, 294 F.3d at 374 (citations omitted); *see also id.* at 375 (noting, however, that the conduct need not be overtly sexual in nature (citations omitted)).

In sum, to survive a motion to dismiss, a plaintiff need only plead facts sufficient to support the conclusion that she was faced with ""'harassment . . . of such quality or quantity that a reasonable employee would find the conditions of her employment *altered* for the worse,""' and the Second Circuit has "repeatedly cautioned against setting the bar too high" in this context, *Terry*, 336 F.3d at 148 (quotation omitted).

Defendants argue that the work environment was not objectively severe and that Plaintiff cannot show any actions were taken because of her sex. *See* Dkt. No. 11-2 at 8-9; *see also* Dkt. No. 19 at 12. However, considering the several clearly sexual comments and actions including the March 19, 2015 calculator throwing incident, which is arguably sexually charged as Plaintiff alleges this event took place in retaliation for her complaints; the Court finds that she has pled sufficient facts to give rise to a plausible Title VII hostile work environment claim against Defendant DOCCS.

The Court's analysis does not end there, however, because to establish an employer's liability for the actions of its employees, a plaintiff must show that the hostile work environment

can be imputed to the employer.  *See Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2439 (2013).

Where the harasser is a supervisor,

> an employer may be vicariously liable for an employee's unlawful harassment only when the employer has empowered that employee to take tangible employment actions against the victim, *i.e.*, to effect a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."

*Id*. at 2443 (quoting [*Burlington Indus., Inc. v.] Ellerth*, [524 U.S. 742,] 761, 118 S. Ct. 2257 [(1998)]).

However, where the harasser is a co-worker, "the employer is liable only if it was negligent in controlling working conditions."  *Id*. at 2439.

As to Plaintiff's hostile work environment claims at Willard, Defendant Hetrick was the Captain, *see* Dkt. No. 17-2 at ¶ 16; Defendant Reynolds was Plaintiff's "immediate supervisor," *see id.* at ¶ 15; and Plaintiff alleges that Defendant Horton "repeatedly exercised authority in directing [her]," *see id.* at ¶ 14.  Plaintiff has sufficiently pled that Defendants Hetrick and Reynolds were her "supervisors" for purposes of Title VII; however, she has not alleged facts that show that Defendant Horton was her supervisor.  There is no evidence in the complaint that Defendant Horton was "empowered by [DOCCS] to take tangible employment actions against" her.[8]  *Ball State*, 133 S. Ct. at 2443.  Therefore, the Court can impute liability to Defendant DOCCS for Defendant Horton's actions only if it was "negligent in controlling working conditions."  *Id*. at 2439.

---

[8] Plaintiff argues that Defendant Horton has exercised authority over her making him her de-facto supervisor.  *See* Dkt. No. 17-2 at ¶¶ 20-22 (asserting that Defendant Horton once informed Plaintiff that her staff was not appropriately dressed and overruled her declaration that the inmate barber violated the dress code).  However, whether one has authority over another is not the test articulated in *Ball State* to determine whether an employer is liable under Title VII for the actions of its employees.

In this case, Plaintiff has sufficiently pled that DOCCS was negligent in controlling the working conditions. For example, during the March 19, 2015 incident, Plaintiff alleges that she asked Defendant Hetrick to speak with her facility union representative and the only person Defendant Hetrick offered her a chance to speak with was Defendant Horton -- the person who, minutes before, aggressively threw a calculator at her. *See* Dkt. No. 14-2 at ¶ 33(i). Furthermore, Plaintiff alleges that she wrote a 16-page complaint in January 15, 2015, detailing the sexual discrimination at Willard; however, more than three months passed before any investigation was scheduled to take place. In the meantime, Plaintiff was working with the very people she had accused of harassment. Thus, Defendant DOCCS can be responsible for the work environment at Willard. Therefore, the Court denies Defendants' motion to dismiss Plaintiff's fourth cause of action insofar as it alleges a Title VII hostile work environment claim against Defendant DOCCS for the actions of Defendants Hetrick, Horton, and Reynolds.

### b. Section 1983 -- Defendants Reynolds and Horton

Plaintiff alleges that Defendants Reynolds and Horton created a hostile work environment based on her sex in violation of § 1983. "Section 1983, through its application of the Equal Protection Clause of the Fourteenth Amendment, 'protect[s] public employees from various forms of discrimination, including hostile work environment and disparate treatment' on the basis of [sex]." *Littlejohn*, 795 F.3d at 320 (quoting *Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006)).

To allege a hostile work environment claim, "a plaintiff must plead facts that would tend to show that the complained of conduct: (1) 'is objectively severe or pervasive -- that is, . . . creates an environment that a reasonable person would find hostile or abusive'; (2) creates an

environment 'that the plaintiff subjectively perceives as hostile or abusive'; and (3) 'creates such an environment because of the plaintiff's sex.'" *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (quotation omitted). Courts should assess work environment hostility based on "'the totality of the circumstances.'" *Id.* (quoting *Harris v. Forklift Sys, Inc.*, 510 U.S. 17, 23, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993)). "Factors that a court might consider in assessing the totality of the circumstances include: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is threatening and humiliating, or a mere offensive utterance; and (4) 'whether it unreasonably interferes with an employee's work performance.'" *Id.* (quotation omitted). Furthermore, "to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) (citations omitted).

With this standard in mind, the Court finds that Plaintiff has pled sufficient facts to withstand Defendants' motion to dismiss her § 1983 hostile work environment claims against Defendants Horton and Reynolds. With regard to her claim against Defendant Horton, Plaintiff relies on two statements he made in June 2013, one statement in October 2013, and one incident on March 19, 2015, where he threw a calculator at her. In June 2013, Defendant Horton stated to Plaintiff, "Must be nice, you've only been here a few days and the Department is sending you off to training. I guess that is what happens when you're a woman and the Dep's kid." *See* Dkt. No 17-2 at ¶ 23a. Further, in June 2013, Defendant Horton stated to Plaintiff, "What makes you qualified to run a study group? . . . I don't kiss the administration's ass! Looks like we have another fucking Grimes." ("Grimes" refers to Carol Grimes, a female sergeant that previously worked at Willard). *See id.* at ¶ 23b. In October 2013, Defendant Horton stated to Plaintiff, "I

don't give a fuck.  No one's going to listen to you . . . because you're a woman."  *See id.* at ¶ 23c.  Plaintiff also generally alleges that Defendant Horton "continuously and intentionally singled [her] out" from her peers.  *See id.* at ¶ 23.  Finally, Plaintiff alleges that Horton openly told officers to disregard her memos.  *See id.* at ¶ 37.

It is objectively reasonable to consider a co-worker throwing a calculator in your direction, among other things, as constituting a hostile work environment.  Further, Plaintiff subjectively believed her workplace was a hostile environment, which manifested in her emotional response to the March 19, 2015 incident where she required medical attention.  Considering the gender-charged nature of these facts and the procedural posture of this litigation, the Court denies Defendants' motion to dismiss Plaintiff's first cause of action insofar as it alleges a § 1983 hostile work environment claim against Defendant Horton.

Moreover, Plaintiff has alleged sufficient facts to maintain her hostile work environment claim against Defendant Reynolds.  Plaintiff alleges that Defendant Reynolds initiated an inappropriate conversation with her in June 2013.  According to Plaintiff, Defendant Reynolds asked her if she would like to "go out sometime."  When Plaintiff declined, stating she was married, Defendant Reynolds asked if she were "happily married?"  Sometime later, Reynolds told her, "You know if things don't work out with your husband the offer still stands."  *See id* at ¶ 28.  Further, Plaintiff stated that she "always declined Defendant Reynolds' requests for a date" insinuating that Defendant Reynolds repeatedly asked Plaintiff out.  *See id.* at ¶ 30.  Finally, Defendant Reynolds made an inappropriate comment in December 2014 stating, "See I knew you could handle it, you're a woman.  Women are good at multi-tasking."  *See id.* at ¶ 23d.  Once again, these facts objectively and subjectively constitute a hostile work environment based on

Plaintiff's sex. Thus, the Court denies Defendants' motion to dismiss Plaintiff's third cause of action insofar as it alleges a § 1983 hostile work environment claim against Defendant Reynolds.

### 5. Quid pro quo sexual harassment[9]

"*[Q]uid pro quo harassment* occurs when 'submission to or rejection of [unwelcome sexual] conduct by an individual is used as the basis for employment decisions affecting such individual.'" *Karibian v. Columbia Univ.*, 14 F.3d 773, 777 (2d Cir. 1994) (quoting 29 C.F.R. § 1604.11(a)(2) (1993)) (other citation omitted). Therefore, "a plaintiff must present evidence that she was subject to unwelcome sexual conduct, and that her reaction to that conduct was then used as the basis for decisions affecting the compensation, terms, conditions or privileges of her employment." *Id.* (citations omitted). "[W]hen an employee can demonstrate that 'a tangible employment action resulted from a refusal to submit to a supervisor's sexual demands, . . . she establishes that the employment decision itself constitutes a change in the terms and conditions of employment that is actionable[.]'" *Wagner v. Burnham*, No. 1:03-CV-1522, 2006 WL 266551, *7 (N.D.N.Y. Feb. 1, 2006) (quoting *Burlington Indus.*, 524 U.S. at 753-54). "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) (citations omitted).

Plaintiff's *quid pro quo* claim fails for the same reason her discrimination claim fails under § 1983 because she cannot allege that she suffered a tangible adverse employment action

---

[9] Courts analyze sexual harassment claims under § 1983 under a Title VII framework. *See Wagner v. Burnham*, No. 1:03-CV-1522, 2006 WL 266551, *7 (N.D.N.Y. Feb. 1, 2006).

as a result of refusing Defendant Reynold's sexual advances. Although she claims that Reynolds denied her time-off requests, this is not an adverse action. *See Wharton v. Cty. of Nassau*, No. 10-CV-0265, 2013 WL 4851713, *9 (E.D.N.Y. Sept. 10, 2013) (stating that "[d]enials of vacation time are not adverse actions" (citations omitted)).

Therefore, the Court grants Defendants' motion to dismiss Plaintiff's third cause of action insofar as it alleges quid pro quo sexual harassment against Defendant Reynolds.


## IV. CONCLUSION

Having reviewed the entire file in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for leave to amend her complaint, *see* Dkt. No. 17, is **GRANTED**. Therefore, the Court instructs Plaintiff to "file and serve the original signed amended [complaint] within fourteen (14) days" of the date of this Memorandum-Decision and Order, *see* L.R. 7.1(a)(4); and the Court further

**ORDERS** that Defendants' motion to dismiss Plaintiff's first cause of action, pursuant to § 1983, against Defendant Horton, *see* Dkt. No. 11, is **DENIED** insofar as it pertains to a hostile work environment claim but **GRANTED** insofar as it asserts a discrimination claim against Defendant Horton; and the Court further

**ORDERS** that Defendants' motion to dismiss Plaintiff's second cause of action, pursuant to § 1983, for retaliation against Defendants Horton, Reynolds, and Hetrick, *see* Dkt. No. 11, is **DENIED;** and the Court further

**ORDERS** that Defendants' motion to dismiss Plaintiff's third cause of action, pursuant to § 1983, against Defendant Reynolds, *see* Dkt. No. 11, is **DENIED** insofar as it pertains to a

hostile work environment claim, but **GRANTED** insofar as it asserts a quid pro quo sexual harassment claim; and the Court further

**ORDERS** that Defendants' motion to dismiss Plaintiff's fourth cause of action, pursuant to Title VII, against Defendant DOCCS, *see* Dkt. No. 11, is **DENIED** insofar as it pertains to a hostile work environment claim but **GRANTED** insofar as it asserts a discrimination claim against Defendant DOCCS; and the Court further

**ORDERS** that Defendants' motion to dismiss Plaintiff's fifth cause of action, pursuant to Title VII, against Defendant DOCCS for retaliation, *see* Dkt. No. 11, is **DENIED;** and the Court further

**ORDERS** that Defendant Bartlett is **DISMISSED** from this action because Plaintiff has not asserted any claims against him in her proposed amended complaint; and the Court further

**ORDERS** that Defendants' motion to dismiss Plaintiff's § 1983 claims insofar as she asserts those claims against Defendants Horton, Reynolds, and Hetrick in their official capacities is **GRANTED**;[10] and the Court further

**ORDERS** that this case is referred to Magistrate Judge Baxter for all further pretrial matters.

**IT IS SO ORDERED.**

Dated: March 30, 2017
     Syracuse, New York

                                      Frederick J. Scullin, Jr.
                                      Senior United States District Judge

---

[10] As a result of this Memorandum-Decision and Order, the claims that remain are (1) Plaintiff's § 1983 hostile work environment claims against Defendants Horton, and Reynolds; (2) Plaintiff's § 1983 retaliation claims against Defendants Horton, Reynolds, and Hetrick; (3) Plaintiff's Title VII retaliation claim against Defendant DOCCS; and (4) Plaintiff's Title VII hostile work environment claim against Defendant DOCCS.